UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,                          Case No.  03-80504

v.                                       District Judge Arthur J. Tarnow
                                           Magistrate Judge R. Steven Whalen

KENNETH GRAHAM and
KYLE DRESBACH,

       Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the Court are Defendants' Motions to Determine Partial Satisfaction of Restitution Judgment and for Other Relief [Docket #257 and #265][1], which were referred to the undersigned by U.S. District Judge Arthur J. Tarnow.[2]  Having reviewed the pleadings and exhibits and having heard the argument of counsel, I recommend that both motions be DENIED, for the reasons set forth below.

---

[1] Defendant Graham's motion was filed on May 30, 2006 [Docket #257]. Defendant Dresbach's filed a Notice of Intent to join in Graham's motion on June 7, 2006 [Docket #259], and filed his own motion on July 20, 2006 [Docket #265].  Oral argument on both motions was heard on August 8, 2006.

[2] Post-judgment motions relating to restitution are not pretrial matters, and therefore a Magistrate Judge who is referred these matters must proceed by Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(b).  *United States v. Cagle*, 235 F.R.D. 641, 643, fn. 1 (E.D. Mich. 2006); *Massey v. City of Ferndale*, 7 F.3d 506 (6th Cir. 1993).

## I.  FACTS

On August 12, 2004, Defendants Kenneth J. Graham and Kyle Dresbach were convicted by a jury of Conspiracy, Conspiracy to Commit Money Laundering, Laundering of Monetary Instruments and Subscribing a False Tax Return.  As part of their sentences, they were ordered to pay their former employer, ThyssenKrupp Materials NA, Inc. ("Thyssen") restitution in the amount of $8.8 million.  Their restitution liability is joint and several.

The charged conspiracy covered a period from January, 1991 to April, 2001.  On September 9, 1986, Defendant Graham entered into an employment contract with Thyssen.[3]  This contract contained the following provision, at ¶ 12:

> "Graham undertakes to devote his full time and efforts to the discharge of duties, to exercise due care and diligence in all activities on behalf of the Company, and to obey the rules and regulations adopted by the Board of Directors."

On March 21, 1996, Graham's employment agreement was extended, and included the provision that "[a]ll other provisions of the Employment Contract dated September 9, 1986 shall remain in force."  Also on March 21, 1996, Thyssen sent Graham a letter agreement, which Graham signed on April 27, 1996, dealing with "special supplemental pension payments."[4]  This letter agreement described three components to Graham's

---

[3] Graham's 1986 employment agreement is attached to Thyssen's Memorandum in Opposition to this Motion as Exhibit 1.

[4] The letter agreement is attached to Defendant Graham's Motion.

-2-

retirement package, as elucidated by his attorney at oral argument (Tr. 8-8-06, 33-35, 38): (1) Graham would receive benefits under the Thyssen Inc. Pension Plan (TIPP); (2) he would receive payments under Thyssen's Supplemental Executive Retirement Plan (SERP); and (3) if payments due under TIPP and SERP total less than $365,000 per year, "additional special supplemental payments will be made...to make the total of your benefits $365,000 for such year."[5]

Defendant Dresbach had a similar employment agreement with Thyssen. However, although Dresbach was, under the terms of his employment, to receive a regular TIPP pension and SERP payments upon retirement, he was not provided with the special supplemental pension payments that guaranteed Graham a minimum annual amount.

Defendant Graham elected to take his TIPP pension as a lump sum, apparently totaling over $1 million. That amount was the subject of separate garnishment proceedings, and is not relevant to the present motion. Graham conceded at oral argument that his SERP benefits (estimated at $17,000 to $18,000 per month) are subject to a "bad boy" clause in the SERP agreement, whereby he would lose his right to the payments for dishonesty to the company (Tr. 8-8-06, 28, 35). However, Graham argues in this Motion that he has a vested right in his special supplemental payments (the guaranteed $365,000 per year) that should

---

[5]The March 21st letter agreement, drafted the same day as the extension of Graham's employment agreement, addresses only the pension/retirement provisions, stating at the last paragraph, "This description constitutes the entire understanding between us *regarding your pension benefits under all Thyssen pension programs and arrangements*. It therefore supplements the employment agreement signed the same day.

offset his restitution obligation.

Defendant Dresbach took his TIPP pension as an annuity, and it is being garnished. He argues that his restitution obligation should be offset by the amount of his SERP benefits.

## II.   ANALYSIS

### A.   Graham

As noted, Defendant Graham's retirement compensation from Thyssen included three components. The TIPP pension, which he took as a lump sum payment, is not at issue in this Motion. As his attorney conceded at oral argument, the SERP agreement included a "bad boy" provision under which the SERP would be forfeited if he engaged in dishonest conduct. Graham was convicted of criminal conduct that caused Thyssen to lose millions of dollars, and that misconduct occurred during the course of his employment. Graham has therefore forfeited his right to SERP payments.

By his misconduct, Graham has also forfeited his right to the special supplemental pension payments that guaranteed a minimum annual payment of $365,000. Applying principles of contract law, Graham has lost his right to those payments for two reasons.

First, Graham's misconduct was a material breach of his employment contract, specifically ¶12 of the 1986 agreement, which was incorporated into the 1996 agreement. That provision imposed a fiduciary duty on Graham, requiring him to exercise due care and diligence and to follow all rules and regulations of the Board of Directors. Graham's misconduct resulted in the loss of millions of dollars to Thyssen, and there can be no serious question as to whether the breach was material. *See Holtzlander v. Brownell*, 182 Mich.App.

716, 721, 453 N.W.2d 295 (1990) (a consideration in determining whether a breach is material "is whether the nonbreaching party obtained the benefit which he or she reasonably expected to receive"). Where there has been a material breach of a contract, the nonbreaching party is entitled to the equitable remedy of rescission. *Omnincon of Michigan v. Giannetti Investment Co.*, 221 Mich.App. 341, 348, 561 N.W.2d 138 (1997). To warrant rescission, the material breach must affect a substantial or essential part of the contract *or* involve a misrepresentation that was made with intent to deceive or mislead. *Id.*[6] Rescission annuls the contract *ab initio* and restores the parties to their original positions before entering into the contract. *Lash v. Allstate Ins. Co.*, 210 Mich.App. 98, 102, 532 N.W.2d 869 (1995).

Secondly, apart from the question of rescission, Graham cannot profit from the blatant breach of his fiduciary duty to Thyssen. Under principles of agency, an agent owes his principal a duty of good faith, loyalty and fair dealing, and under Michigan law, "an agent forfeits his right to compensation by misconduct, breach of duty or wilful disregard of the obligation imposed on him by the agency relationship." *Muglia v. Kaumagraph Corp.*, 64 F.3d 663, 1995 WL 492933, at *5 (6th Cir. 1995)(unpublished), citing *Sweeny & Moore, Inc. V. Chapman*, 295 Mich. 360, 363, 294 N.W. 711 (1940). An agent cannot profit at his principal's expense. *Stephenson v. Golden*, 279 Mich. 710, 736, 276 N.W. 849 (1937).

---

[6] In this case, Graham entered into the 1996 employment agreement in the midst of his participation in a criminal conspiracy that spanned the years 1991 to 2001. This shows that he agreed to ¶12 with the intent to deceive or mislead. In any event, Graham's attorney conceded at oral argument that the conduct alleged in the indictment would constitute a material breach, although he did not concede that the contract would thereby be voided or rescinded (Tr. 8-8-06, 10-11).

These agency principles apply equally to a corporate officer's duty to his or her corporation. In *Attorney General ex.rel. Ketcham v. Lapeer Farmers Mut. Fire Ins. Ass'n*, 297 Mich.188, 192, 297 N.W. 230 (1941), the Court stated that "[i]t is the generally accepted rule that an officer may forfeit all right to compensation because of fraud, misconduct or gross neglect in the management of the corporation or in the performance of his duties," adding:

> "The basis for this doctrine is the relationship between the corporate officer and the corporation. It has been placed on the grounds of agency...or that a corporate officer occupies a position analogous to that of a trustee,...but the cases where this principle has been applied to deny a corporate officer his salary have usually been tainted with bad faith." *Id*. (internal citations omitted).

Because Graham materially breached his employment contract as well as his fiduciary duty to his employer, Thyssen has no obligation to pay him $365,000 per year, or any amount under the special supplemental pension agreement. That being the case, Graham is not entitled to an offset against the Court's restitution order.

### B.   Dresbach

Defendant Dresbach was not given a special supplemental pension agreement, but had the same SERP arrangement as Graham (Tr. 8-8-06, 19). That agreement contained a "bad boy" provision under which he would lose his right to SERP payments for dishonesty (Tr. 8-8-06, 28, 35). Given the fact of his conviction, the terms of the SERP agreement result in his forfeiture of those payments *ab initio*. Thus, he is not entitled to any SERP payments that were withheld between the date of the indictment and the date of his conviction. In addition, as set forth in *Ketcham, supra*, Dresbach's breach of his fiduciary duty as a corporate officer

disentitles him to SERP payments.  Accordingly, Dresbach, like Graham, is not entitled to an offset against the Court's restitution order.

### III.   CONCLUSION

I recommend that Defendant Graham's [Docket #257] and Defendant Dresbach's [Docket #265] Motions to Determine Partial Satisfaction of Restitution be DENIED.

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th Cir.  1981).  Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sullivan,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

          S/R. Steven Whalen
          R. STEVEN WHALEN
          UNITED STATES MAGISTRATE JUDGE

Dated: February 13, 2007

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on February 13, 2007.

          S/Gina Wilson
          Judicial Assistant